UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION at PIKEVILLE

CIVIL ACTION NO. 07-38-GWU

KATHY L. CORNETT, PLAINTIFF,

VS. **MEMORANDUM OPINION**

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY, DEFENDANT.

### INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative denial of her application for Supplemental Security Income (SSI). The appeal is currently before the court on cross-motions for summary judgment.

### APPLICABLE LAW

The Sixth Circuit Court of Appeals has set out the steps applicable to judicial review of Social Security disability benefit cases:

1. Is the claimant currently engaged in substantial gainful activity? If yes, the claimant is not disabled. If no, proceed to Step 2. See 20 C.F.R. 404.1520(b), 416.920(b).

2. Does the claimant have any medically determinable physical or mental impairment(s)? If yes, proceed to Step 3. If no, the claimant is not disabled. See 20 C.F.R. 404.1508, 416.908.

3. Does the claimant have any severe impairment(s)--i.e., any impairment(s) significantly limiting the claimant's physical or mental ability to do basic work activities? If yes, proceed to Step 4. If no, the claimant is not disabled. See 20 C.F.R. 404.1520(c), 404.1521, 416.920(c), 461.921.

1

    4.      Can the claimant's severe impairment(s) be expected to result in death or last for a continuous period of at least 12 months? If yes, proceed to Step 5. If no, the claimant is not disabled. See 20 C.F.R. 404.920(d), 416.920(d).

    5.      Does the claimant have any impairment or combination of impairments meeting or equaling in severity an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listing of Impairments)? If yes, the claimant is disabled. If no, proceed to Step 6. See 20 C.F.R. 404.1520(d), 404.1526(a), 416.920(d), 416.926(a).

    6.      Can the claimant, despite his impairment(s), considering his residual functional capacity and the physical and mental demands of the work he has done in the past, still perform this kind of past relevant work? If yes, the claimant was not disabled. If no, proceed to Step 7. See 20 C.F.R. 404.1520(e), 416.920(e).

    7.      Can the claimant, despite his impairment(s), considering his residual functional capacity, age, education, and past work experience, do other work--i.e., any other substantial gainful activity which exists in the national economy? If yes, the claimant is not disabled. See 20 C.F.R. 404.1505(a), 404.1520(f)(1), 416.905(a), 416.920(f)(1).

Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984).

Applying this analysis, it must be remembered that the principles pertinent to the judicial review of administrative agency action apply. Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991). This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to

support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

One of the detracting factors in the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim. Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982). This presumes, of course, that the treating physician's opinion is based on objective medical findings. Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984). Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary. Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987). These have long been well-settled principles within the Circuit. Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain. Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms. 20 C.F.R. Section 404.1529 (1991). However, in evaluating a claimant's allegations of disabling pain:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the

3

alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

Another issue concerns the effect of proof that an impairment may be remedied by treatment. The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability. Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984). However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations. Id. Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the Court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups. Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987). Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step six refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987). The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983). However, both 20 C.F.R. 416.965(a) and 20 C.F.R. 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all. Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994). One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category

5

07-38 Cornett

if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities. 20 C.F.R. 404.1567(b). "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing. 20 C.F.R. 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990). If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid. Ibid. In such cases, the agency may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985). Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert

6

accurately portrays the plaintiff's physical and mental impairments. <u>Varley v. Secretary of Health and Human Services</u>, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The plaintiff, Kathy L. Cornett, filed her current application for SSI on October 7, 2004, alleging disability beginning September 30, 2002, due to an affective/mood disorder and arthritis. (Tr. 57,67).[1] An Administrative Law Judge (ALJ) determined that the plaintiff's depression and arthritis were medically determinable impairments, but they did not have more than a minimal effect, either singly or in combination, on the plaintiff's ability to perform basic work-related activities. Therefore, he found that the plaintiff did not have a "severe" impairment, and terminated the sequential evaluation process at Step Three of the <u>Garner</u> analysis. The Appeals Council declined to review, and this action followed.

On appeal, this court must determine whether the administrative decision is supported by substantial evidence.

Mrs. Cornett testified that she had last worked in a school program in 2002, minding problem students. (Tr. 453-4). She felt she was unable to work because

---

[1] The plaintiff had previously been awarded SSI benefits in a February, 1994 decision by an Administrative Law Judge (ALJ), with an onset date of September 2, 1992. (Tr. 32-3). At that time she was found to have "severe" impairments, including a depressive disorder, mild chondromalacia, osteoarthritis, and a somatoform disorder, which prevented her from performing a full range of even sedentary level work. (Tr. 31-3). The plaintiff stated that these benefits were discontinued when her husband was awarded SSI because of excessive income. (Tr. 462). It is not clear exactly when this happened.

of nervousness, which resulted in poor concentration and panic attacks. (Tr. 454-5). She also described severe arthritis in all parts of her body. (Tr. 456-8). She felt that her condition had worsened since her husband's death from a brain tumor in 2004. (Tr. 454, 462). She testified that she had a driver's license but had not driven in a long time, and did not go anywhere without someone to accompany her. (Tr. 458). She could perform some household tasks, but it would take her "forever" to fold clothes. Her younger son would pull the clothes out of the washer. (Tr. 461).

Medical evidence in the transcript includes emergency room notes from January, 2004 for complaints of chest pain. There were no cardiac abnormalities discovered, and the plaintiff was given medication for anxiety and diagnosed as having chest wall pain. (Tr. 101-15).

Mrs. Cornett underwent a consultative physical evaluation by Dr. Mark Burns on January 29, 2005. She complained of longstanding arthritis, and reported having had x-rays which showed decreased cartilage in her knees and shoulders along with decreased intervertebral spacing throughout her spine, but apparently Dr. Burns had no records to review. (Tr. 137). The physical and orthopedic examination conducted by Dr. Burns was within normal limits, however, and no functional limitations were suggested. (Tr. 138-9).

Dr. Christopher Catt conducted a psychological evaluation of the plaintiff on December 30, 2004. The psychologist noted that Mrs. Cornett was recently widowed; her husband had died September 29, 2004. (Tr. 118). She continued to

have some contact with the hospice organization which had been called in during the death of her husband in the form of at least talking to a grief counselor, but Dr. Catt's report is not clear as to whether she was having regular grief counseling. (Tr. 117). Her medications included Klonopin and Lexapro, which she had just started taking. (Id.). She described poor sleep, a poor capacity to do housework and a poor capacity to manage bills. (Tr. 117-18). On the day of the examination, her attention and concentration seemed adequate for simple, repetitive tasks, her recall and memory were normal, and she was able to smile and laugh at times during the examination, although she did become sad when discussing her husband's death in September. (Tr. 118-19). Dr. Catt listed a diagnostic impression of "bereavement," and listed a current Global Assessment of Functioning (GAF) score of 55 to 60. (Tr. 120). A GAF score in this range reflects moderate symptoms or moderate difficulty in social, occupational, or school functioning. <u>Diagnostic and Statistical Manual of Mental Disorders</u> (4th Ed.--Text Revision) (DSM-IV-TR), p. 34. In terms of her functional capacity, the psychologist opined that Mrs. Cornett had the capacity to understand instructions and sustain attention and concentration for simple, repetitive tasks and could interact with fellow workers and supervisors without demonstrating behavioral extremes. She had the capacity to "tolerate <u>some</u> stress of employment" (emphasis added). (Id.).

In contrast to the two consultative opinions, Dr. George H. Caudill, the plaintiff's treating family physician, completed a medical source statement on June

9

22, 2005 limiting her to lifting less than ten pounds occasionally and frequently, standing and walking less than two hours in an eight-hour day, having a limited ability to push and pull with the upper and lower extremities, never kneeling, crouching, or crawling, occasionally climbing and balancing, and having a limited ability to reach, handle, finger, feel, and work around temperature extremes, vibration, humidity/wetness, and hazards.  (Tr. 159-62).  As grounds for these restrictions, Dr. Caudill cited the plaintiff's complaints of chronic pain in most body parts, and added that she was "most limited by depression--I believe her pain is a manifestation of her depression."  Dr. Caudill also submitted office notes reflecting treatment on a regular basis since the 1990s.  (Tr. 163-337).  Some of the more recent notes reflect prescriptions for anti-depressant medications, which were increased in dosage (e.g., Tr. 200).  The office notes consistently report both moderate pain and depression, pain on flexing the legs to 45 degrees, multiple tender areas in the back, tenderness in the right wrist and left knee and crepitus in both knees.  (Tr. 163-4, 166-7, 169, 172, 199-200).

     Finally, records were submitted of an involuntary four-day psychiatric hospitalization in November, 2005 as the result of bizarre behavior including the plaintiff putting her car into reverse at 30 miles per hour and tearing off her clothes. (Tr. 355). At the time of admission, she was cursing and laughing hysterically. (Tr. 340).  She was found to be both depressed and anxious and described stressors in her life with the death of her husband the previous year, and financial problems.

(Tr. 355-6).  She had run out of her regular medication, Klonopin, and was restarted on this as well as some anti-depressant medications.  (Tr. 356).  She was discharged in improved condition with a diagnosis of a moderate, recurrent major depressive disorder.  (Id.).  Her GAF score was improved from 30 at the time of admission to 61 at the time of discharge.  A GAF of 61 reflects only mild symptoms per the DSM-IV-TR.  She was instructed to continue the medications Celexa and Remeron and follow up with a counselor at the Kentucky River Comprehensive Care Center.  (Tr. 356-7).

The court must determine whether the ALJ's conclusion that this evidence did not establish the presence of a "severe" impairment is supported by substantial evidence.  In the Sixth Circuit, the Step Three severity regulation has been held to be a de minimis hurdle in the disability determination process.  Murphy v. Secretary of Health and Human Services, 801 F.2d 182, 185 (6th Cir. 1986).  An impairment can be considered not severe only if it is a "slight abnormality that minimally affects work ability regardless of age, education, and experience."  Farris v. Secretary of Health and Human Services, 773 F.2d 85, 90 (6th Cir. 1985).  The Sixth Circuit has noted that "this lenient interpretation of the severity requirement in part represents the courts' response to the Secretary's questionable practice in the early 1980s of using the step two regulation to deny meritorious disability claims without proper vocational analysis. . . .  It is now plain that in the vast majority of cases a disability

11

claim may not be dismissed without consideration of the claimant's individual vocational situation." Higgs v. Bowen, 880 F.2d 860, 862 (6th Cir. 1988).

The ALJ stated that he considered Dr. Caudill's opinion that the plaintiff was "in effect disabled," but then proceeded to criticize this as an issue reserved to the Commissioner and not entitled to controlling weight or special significance. (Tr. 19-20). In view of the fact that Dr. Caudill did not make a conclusory statement that the plaintiff was "disabled," the ALJ's observation provides little basis for discounting his opinion. The ALJ did go on, however, to state that Dr. Caudill's specific assessment of Mrs. Cornett's residual functional capacity was not well supported by objective evidence, and was inconsistent with other substantial evidence in the record, including the range of activities of daily living in which she engaged. (Tr. 20).

As noted in the Applicable Law section of this opinion, great deference is due to the opinion of a treating physician if it is well supported by medically acceptable clinical and diagnostic techniques and is not inconsistent with other substantial evidence in the record. If the opinion of a treating physician is to be rejected, the applicable regulations and case law provide that the ALJ must consider a host of factors, including the length, frequency, nature, and extent of the treatment relationship, the supportability and consistency of the physician's conclusions, his specialization, and any other relevant factors. Wilson v. Commissioner of Social Security, 378 F.3d 541, 544 (6th Cir. 2004). In addition, the ALJ must provide "good reasons" for discounting a treating physician's opinions, in order to make clear to

any subsequent reviewers the weight the adjudicator gave the treating source's medical opinion and the reasons for that weight. Social Security Ruling 96-2p, p. 5. The Sixth Circuit has held that a failure to follow this procedural requirement denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based on the record. Rogers v. Commissioner of Social Security, 486 F.3d 234, 243 (6th Cir. 2007). The Court also stated in Rogers that a simple statement that the treating physician's opinion was not supported by the evidence did not provide sufficient justification under the regulations, and it was necessary to actually explain what weight was given the treating physician opinion. Id. at 246.

Viewing the ALJ's decision in the light of these factors, it would appear that the only two factors actually cited by the ALJ were relatively minor clinical findings and diagnostic studies, and the belief that Mrs. Cornett's activities of daily living were inconsistent with the physician's opinion. (Tr. 20). The mention of clinical and diagnostic studies suggests that the ALJ was considering Dr. Caudill's report largely in terms of purely physical restrictions. However, the physician emphasized that he felt that depression was the plaintiff's main problem and that it was greatly exacerbating her complaints of chronic pain. In these circumstances, it would not necessarily be inconsistent for the physical findings to be comparatively mild. Moreover, the ALJ's citation of the plaintiff's activities of daily living as being inconsistent appears to be somewhat one-sided. Previously, the ALJ had cited the plaintiff's testimony, disability report, and statements to Dr. Catt as indicating that

07-38 Cornett

she was able to go shopping with her son, watch television, handle money responsibilities, do some household chores, do laundry, read for enjoyment, cook small meals, wash dishes using the dishwasher, and attend to her personal needs. (Tr. 19). Some of this summary is questionable in that the plaintiff had testified that she just left the television on for company, that her teenage sons mostly prepared their own meals and did most of the shopping although she sometimes went with other people, and she was no longer able to concentrate to read. (Tr. 461, 465-7). The plaintiff's disability report specifically states that she needed to have help with the laundry, cleaning house and cooking, and some help with her personal needs. (Tr. 91). Dr. Catt's report also contained a reference to a claim for poor capacity to do housework and to manage bills, and although she would shop twice monthly, her son would generally go to the store. He also helped her with the payment of bills, and did lawnwork. (Tr. 118). This presents a considerably different picture of her activities than is represented in the hearing decision. Therefore, the rationale given by the ALJ for rejecting the treating physician opinion is inadequate.[2]

---

[2] The one-time examination by Dr. Catt is not particularly persuasive in discounting the treating physician opinion, either. The GAF scores he cited would be consistent with at least a "moderate" impairment even if the plaintiff was capable of performing certain simple, low stress activities. Since the ALJ found that the plaintiff did not have a "severe" impairment, a finding of moderate restrictions would be inconsistent. From another point of view, a state agency reviewing source criticized Dr. Catt's diagnosis by saying that "bereavement" was not an actual mental impairment. (Tr. 136). Neither of the two non-examining state agency psychologists had the benefit of the review of all of the evidence, and their opinions were given before Dr. Caudill's assessment was submitted. (Tr. 122, 143). The plaintiff was discharged after her psychiatric

07-38 Cornett

The plaintiff has also submitted additional evidence to the Appeals Council. This evidence cannot form part of this court's substantial evidence review, but it can be considered along with other new evidence on remand.

The decision will be remanded for further consideration

This the 29th day of February, 2008.

Signed By:
*G. Wix Unthank*
United States Senior Judge

---

hospitalization with a GAF indicating only a "mild" impairment, but was also prescribed anti-depressant medications and asked to obtain psychological counseling. This does not seem consistent with a finding of no "severe" impairment, either.